EXHIBIT 2
(Complaint)

Brian F. Buchanan, SBN 086017
Jeremy M. Friedman, SBN 249706
BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101
Telephone: (213) 457-7350
Facsimile: (213) 457-7355
E-mails: bbuchanan@bplawllp.com
        jfriedman@bplawllp.com

Attorneys for Plaintiff ACTON ACADEMY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF HUMBOLDT**

| | |
|---|---|
| ACTON ACADEMY, a Texas Nonprofit Corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>APOGEE HUMBOLDT LLC, a California Limited Liability Company; TIM KENNEDY, an individual; MATT BEAUDREAU, an individual; and DOES 1 through 100, inclusive,<br><br>    Defendants. | CASE NO.:<br><br>**VERIFIED COMPLAINT FOR:**<br><br>1. **Breach of Written Contract**<br>2. **Breach of The Covenant of Good Faith And Fair Dealing**<br>3. **Unfair Competition, Bus. & Prof. Code §§ 17200** *et seq.*<br>4. **Misappropriation of Trade Secrets, Civ. Code, § 3426** *et seq.*<br>5. **Aiding And Abetting Tortious Conduct**<br>6. **Civil Conspiracy**<br>7. **Restitution**<br>8. **Preliminary Injunction**<br>9. **Permanent Injunction**<br>10. **Declaratory Relief**<br><br>**JURY DEMAND** |

Plaintiff ACTON ACADEMY, a Texas Nonprofit Corporation, brings this action against Defendants APOGEE HUMBOLDT LLC, a California Limited Liability Company; TIM KENNEDY, an individual; MATT BEAUDREAU, an individual; and DOES 1 through 100 (collectively, "Defendants"). Plaintiff, for its Complaint, alleges as follows:

**<u>INTRODUCTION</u>**

1.    Acton Academy is a transformative K-12 "learner-driven" educational movement and organization that took over a decade to develop. Its learning design is legally protected and secured by

1

various materials, including its *Trademark License Agreement* and *Access and License Agreement*, which all of Acton Academy's affiliates are required to acknowledge and follow. This case centers on a former Acton Academy affiliate, who are using Acton Academy's proprietary information to build a competing educational system, Apogee, in violation of Acton Academy's *Trademark License Agreement* and *Access and License Agreement*, and in violation of California law and Federal law. Defendants are all part of this competing scheme, utilizing and misappropriating Acton Academy's name, trademark, trade secrets, and goodwill without authorization. As such, this case is about restoring to Acton Academy its rightful ownership and control of intellectual property rights and associated goodwill. Defendants – having gained access to Acton Academy's learning materials through unapproved means – are utilizing and misappropriating Acton's name, trademark, and goodwill without authorization and for purpose and use outside of the *Trademark License Agreement* and *Access and License Agreement*.

## THE PARTIES; JURISDICTION; VENUE

2.      Plaintiff Acton Academy ("Acton Academy", "Acton", or "Plaintiff") is a foreign nonprofit corporation with its principal office in Austin, Travis County, Texas.

3.      Defendant Apogee Humboldt LLC ("Apogee Humboldt") is a California nonprofit religious corporation with its principal office located at 415 Tip Top Ridge Road, McKinleyville, CA 95519.

4.      Defendant TIM KENNEDY ("Kennedy") is an individual, whose current place of residence is unknown. Upon information and belief, he has previously resided in Texas.

5.      Defendant MATT BEAUDREAU ("Beaudreau") is an individual, whose current place of residence is unknown. Upon information and belief, he has previously resided in Texas.

6.      The true names and capacities, whether individual, corporate, associates, agents or otherwise of Defendants DOES 1 through 100, inclusive, are unknown to Plaintiff, who therefore

2
COMPLAINT

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101

sues these Defendants by such fictitious names, and will ask leave of this Court to amend this Complaint when the identities of such individuals have been ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants DOES 1 through 100 are responsible in some manner for the occurrences herein alleged and are proper parties to this action.

7.    DOES 1 through 10, inclusive, are officers and/or owners of Apogee Humboldt.

8.    DOE 1 is the Chief Executive Officer (CEO) of Apogee Humboldt. Upon information and belief, at all material times, DOE 1 has been a resident of the State of California and of the judicial district where this action is filed.

9.    DOE 2 is the Secretary of Apogee Humboldt. Upon information and belief, at all material times, DOE 2 has been a resident of the State of California and of the judicial district where this action is filed.

10.    DOE 3 is the Chief Financial Officer (CFO) of Apogee Humboldt. Upon information and belief, at all material times, DOE 3 has been a resident of the State of California and of the judicial district where this action is filed.

11.    DOES 4 through 10 are other officers and/or owners of Apogee Humboldt. Upon information and belief, at all material times, DOES 4 through 10 have each been residents of the State of California and of the judicial district where this action is filed.

12.    Upon information and belief, DOES 1 through 100 are agents of Apogee Humboldt or of each other and helped to effectuate the wrongdoing set forth below. Accordingly, DOES 1 through 100 are liable, as set forth below.

13.    Plaintiff is informed and believes and thereon alleges that, at all times herein relevant, each of the Defendants (including Apogee Humboldt, Kennedy, Beaudreau, and DOES 1 through 100) (collectively, "Defendants"), was a principal, master, employer, co-conspirator, joint

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101

venturer and successor in interest of every other defendant, and every defendant was acting within the scope of said agency authority, employment, conspiracy, joint venture and succession of interest.

14.     This Court has personal jurisdiction over all Defendants by virtue of specific jurisdiction, as this case arises out and/or relates to each Defendant's contacts with the forum State of California.

15.     This Court also otherwise has personal jurisdiction over all Defendants.

16.     This Court has personal jurisdiction over Apogee Humboldt by virtue of general jurisdiction, because it is organized under California law.

17.     This Court also has personal jurisdiction over Apogee Humboldt by virtue of general jurisdiction, because it is headquartered in the State of California.

18.     This Court has personal jurisdiction over DOES 1 through 100 by virtue of general jurisdiction, because (upon information and belief) they are residents of the State of California.

19.     As an additional basis for this Court's personal jurisdiction over Kennedy, Beaudreau, and DOES 1 through 100, there is jurisdiction because each of them are the alter egos of Apogee Humboldt.

20.     Venue is proper in this Court, based on (*inter alia*) the location of Apogee Humboldt's headquarters and/or the events at issue.  Also, upon information and belief, some or all of the Defendants are residents of the judicial district where this action is filed.

21.     The amount in controversy exceeds the jurisdictional minimum for unlimited civil cases.

<strong><u>COMMON ALLEGATIONS</u></strong>

A.  <strong><u>Plaintiff and Plaintiff's Proprietary Materials</u></strong>

      *1.  Acton Academy and the Acton model*

4

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101

22.    Acton Academy is a 501(c)(3) entity and a transformative K12 "learner-driven" educational movement and organization that Jeff Sandefer and Laura Sandefer founded in 2009 in Austin, Texas.

23.    While not comprehensive, the following briefly details several key Acton Academy components:

- **A Day in the Studio**: Each day begins in a multi-aged "studio" … led by a "guide" or learners with a "Socratic launch" to develop and sharpen critical thinking. Following the morning launch, learners tackle self-paced Core Skills like math, writing and reading …. After lunch, there is another Socratic discussion; then a hands-on quest designed to hone real world skills and a closing Socratic launch.

- **No Homework / Progress "Badges"**: Acton promises parents "no homework" and there are "no grades"—instead progress is measured by a series of badges, often focused on real world skills and featuring "Servant Leadership," an Acton term for serving others, often between studios. …

- **Independent Work on Core Skills**: Learners generally spend the morning working on core skills like math, reading, and writing. While varied by location, most campuses recommend one or two of several online programs.

- **Collaborative Work on More Integrative Topics**: Acton promises learners will "learn to learn"—which means to learn the recipes and processes to accomplish a goal; "learn to do" to deliver work with real world value, and "learn to be" to find a calling that will change the world. "Learning to know"— in other words memorization and regurgitation is not a goal. ….

- **Quests**: The most significant collaborative projects are called "quests," a series of five- or six-week long challenges that are framed under in compelling narrative and explore a wide variety of integrative topics. ...

- **Children's Business Fairs**: The Acton Children's Business Fair originally begun in 2007 (before Acton even opened), the idea came from the Sandefers' own children who organized the first fair in the Sandefers' yard. The fair has come to be a critical part of the curriculum at many Acton Academies. As of the summer of 2020, more than 30,000 children have participated in over 600 fairs in 13 countries.

- **Apprenticeships**: Beginning in middle school, students pursue and complete an apprenticeship each year.

- **Journey Tracker**: Learners track their progress using Journey Tracker, Acton Academy's proprietary studio software program. ...

24.     Acton Academy's learning design includes over 20,000 pages of interwoven proprietary materials, including unique and original examples, frameworks, processes, recipes, systems schedules, maps, contracts, audition funnels, challenges, and launches for learners, parents, guides, and owners. This includes over 1,100 custom Socratic launches and over 350 custom Civilization case discussion templates alone captured in The Playbook—an online secure storage system open only to authorized affiliates and their employees; and Journey Tracker, a proprietary learning management system protected by secure password protocols. These materials are collectively referred to herein as "the Acton Materials."

25.     The Acton Materials and content are legally protected and secured by multiple documents/agreements, including, but not limited to, its *Welcome Letter*, *Trademark License Agreement*, and *Access and License Agreement*. These documents/agreements, which are further discussed below, must be acknowledged and accepted for an affiliate or its employees to access Acton Academy's learning design and content.

### 2.   *Acton Academy Agreements*

26.     Acton Academy's *Trademark License Agreement* provides, in relevant part, the following:

Licensor is the owner of all rights, title, and interest in and to the name and trademark "ACTON ACADEMY" and all goodwill associated therewith (the "Name");

[ * * * ]

2. Goodwill.

Licensee recognizes the great value of the goodwill associated with the Name and acknowledges that the Name and the goodwill pertaining thereto belong exclusively to Licensor. Licensee shall not during the Term of this Agreement, or thereafter, attack the title or any right or interest of Licensor in and to the Name or attack the validity of this License.

[ * * * ]

5. Use of Name by Licensee.

a. Licensee shall select its name for business operations according to one of the two following options, subject to approval by Licensor: (i) "Acton Academy [city]" . . . or (ii) Any name without the word "Acton", in which case Licensee may choose to identify itself as "[unique name"]: An Acton Academy".

b. Licensee shall only use the Name as the name of the Academy and, incidental to the use as the name of the Academy, to identify any of the educational and related services offered at the Academy. No other uses are permitted....

d. Registration of Domain Names. As a license of the Name, Licensee is permitted to use the Name in connection with a single domain name to identify the Academy on the internet in accordance with the terms and conditions of this Section (the "Domain Name"), and otherwise in accordance with this Agreement.

> (i) Licensee shall choose one domain name, consistent with name chosen in 5(a). Licensee's choice of domain name: _____ "
>
> (ii) ... Licensor own[s] all rights, title, and interest in and to the Domain Name.
>
> (iii) ... Notwithstanding the foregoing, as owner of the Domain Name, Licensor reserves the right, in its sole and absolute discretion, to request that the Licensee disable a website or other content associated with the Domain Name and/or cancel the Domain Name registration in the event of a breach of this Agreement. ...

(g) Licensee's use of the Name in accordance with this Agreement shall inure to the benefit of Licensor.

[ * * * ]

7. Effect of Termination.

a. Upon and after the Termination of the Agreement, all rights granted to Licensee hereunder shall forthwith revert to Licensor, and within six (6) months following the Termination of the Agreement, Licensee will cease, and forever refrain from, all use or employment of the Name or anything deemed by Licensor to be similar to the Name, whether alone or in combination with any other word, symbol, or design, in connection with, without limitation, any and all advertising and promotional materials, signage, letterhead, printed materials, brochures, emblems, domain name uses including the Domain Name and all content associated therewith, email advertising, email messages, phone solicitation and phone answering, telephone directories and listings, visible pages of any website or electronic bulletin board, metatags and search keywords.

b.  At the Termination of this Agreement, Licensee shall be deemed to have assigned, transferred and conveyed to Licensor any right in and to the Name, and any associated goodwill, which may have been obtained by Licensee, or which may have vested in Licensee in pursuit of offering goods or services, or through use of the Name in accordance with this Agreement, and Licensee shall execute any instruments requested by Licensor to accomplish or confirm the foregoing. Any such assignment, transfer or

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101

7

conveyance shall be without consideration other than the mutual covenants and considerations of this Agreement.

27.    In sum, the *Trademark License Agreement* provides for the restricted, limited use of "Licensor" Acton Academy's trademarked "Acton Academy" name and all associated goodwill, the restricted, limited use of a specific Licensee name, and the restricted, limited use of a specific Licensee domain name.

28.    The *Access and License Agreement*—which is between Acton Academy as the "Provider" and a given Acton Academy affiliate as the "Customer"—provides for the restricted and limited access and use of the Acton Materials and content. The *Access and License Agreement* defines the "*Authorized Users*" who are subject to its terms to include the following:

> "Authorized Users" means Customer's employees, teachers, instructors, administrators, consultants, contractors, students, and agents (i) who are authorized by Customer to access and use the Services under the rights granted to Customer pursuant to this Agreement and (ii) for whom access to the Services has been purchased hereunder.

It further specifically defines "Documentation," "Provider IP," and "Provider Content":

> (c) "Documentation" means Provider's user manuals, handbooks, and guides relating to the Services provided by Provider to Customer either electronically or in hard copy form. …
>
> (e) "Provider IP" means the Services, the Documentation, Provider Content, and any and all intellectual property provided to Customer or any Authorized User in connection with the foregoing or anything created as a result of this Agreement.
>
> (f) "Provider Content" means learning content that Provider provides to its Customers through the Services, including, but not limited to, learning design content curriculum, discussion outlines, assignments, lesson plans, course outlines, school and studio processes, user contributions and submissions (i.e., examples of past student work), marketing materials, emails, templates, frameworks, notes, videos, case studies, and handbooks created by Provider for Customer and Authorized User's use with the Services.

29.    The limited right to access use Acton Academy's Customer Data, Documentation, Provider IP, and Provider Services, and Services—as set forth and as defined in the *Access and License Agreement*—are granted to the Customer and the Customer's Authorized Users subject to certain terms

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101

and restrictions. Among other things, the *Access and License Agreement* includes the following use restrictions and Customer obligations:

2. <u>Access and Use.</u> …

(c) Use Restrictions. Customer shall not use and shall prohibit its Authorized Users from using the Services for any purposes beyond the scope of the access granted in this Agreement. Customer shall not at any time, directly or indirectly, and shall not permit any Authorized Users to: (i) copy, modify, or create derivative works of the Services or Documentation, in whole or in part; (ii) rent, lease, lend, sell, license, sublicense, assign, distribute, publish, transfer, or otherwise make available the Services or Documentation; (iii) reverse engineer, disassemble, decompile, decode, adapt, or otherwise attempt to derive or gain access to any software component of the Services, in whole or in part; (iv) remove any proprietary notices from the Services or Documentation; (v) use the Services or Documentation in any manner or for any purpose that infringes, misappropriates, or otherwise violates any intellectual property right or other right of any person, or that violates any applicable law (vi) transmit, or procure the sending of, any advertising or promotional material, including any "junk mail", "chain letter" or "spam" or any other similar solicitation… Use of Provider Content shall be restricted for use only in connection with recruiting and advertising of Customer's services and further, such disclosure shall be limited only to discrete portions of Provider Content sufficient to aid such recruiting and advertising.

[* * *]

3. Customer Responsibilities. Customer is responsible and liable for all uses of the Provider IP and Customer Data resulting from access provided by Customer, directly or indirectly, whether such access or use is permitted by or in violation of this Agreement. Without limiting the generality of the foregoing, Customer is responsible for all acts and omissions of all Authorized Users, and any act or omission by an Authorized User that would constitute a breach of this Agreement if taken by Customer will be deemed a breach of this Agreement by Customer. Customer shall use reasonable efforts to make all Authorized Users aware of this Agreement's provisions as applicable to such Authorized User's use of the Services, and shall cause Authorized Users to comply with such provisions.

[ * * * ]

6. Confidential Information. From time to time during the Term, either Party may disclose or make available to the other Party information about its business affairs, products, confidential intellectual property, trade secrets, third-party confidential information, and other sensitive or proprietary information, whether orally or in written, electronic, or other form or media [in written or electronic form or media], whether or not marked, designated or otherwise identified as "confidential" (collectively, "Confidential Information") …. The receiving Party shall not disclose the disclosing Party's Confidential Information to any person or entity, except to the receiving Party's employees or authorized persons who have a need to know the Confidential Information for the receiving Party to exercise its rights or perform its obligations hereunder … On

9

COMPLAINT

the expiration or termination of the Agreement, the receiving Party shall promptly return to the disclosing Party all copies, whether in written, electronic, or other form or media, of the disclosing Party's Confidential Information, or destroy all such copies and certify in writing to the disclosing Party that such Confidential Information has been destroyed.

The *Access and License Agreement* also contains the following termination provision:

(c) Effect of Expiration or Termination. Upon expiration or earlier termination of this Agreement, Customer shall and shall require its Authorized Users to immediately discontinue use of the Provider IP and, without limiting Customer's obligations under Section 6, Customer shall, and shall require its Authorized Users to delete, destroy, or return all copies to the Provider IP and certify in writing to the Provider that the Provider IP has been deleted or destroyed.

30.    As set forth below, Tim Kennedy—as well as Kennedy's associate, Matt Beaudreau, and the entity founded and owned by Kennedy, Apogee Cedar Park, LLC d/b/a Apogee Cedar Park ("Apogee Cedar Park")—acknowledged and agreed to Acton Academy's *Trademark License Agreement* and *Access and License Agreement*. Accordingly, Kennedy, Beaudreau, and the network of related Apogee entities that have since been developed by Kennedy and Beaudreau through use of the Acton Academy provided materials, are bound by the terms contained therein or, at the very least, are improperly in possession of and using the Acton's trademarks and proprietary materials.

**B.    Plaintiff's Relationships with Kennedy, Beaudreau, and Apogee Cedar Park**

31.    In 2017, Beaudreau launched an Acton Academy affiliate in Placer, California followed by two more campuses. Beaudreau contributed little to nothing to Acton Academy's learner design or the creation of the network.

32.    Acton Academy Placer—the Acton campus that Beaudreau represented he owned and the name under which Beaudreau did business in Texas—signed and accepted the terms of Acton Academy's *Access and License Agreement*. Beaudreau and Acton Academy also signed and entered Acton Academy's *Trademark License Agreement*. Pursuant to and in reliance upon Acton Academy Placer's execution and agreement—including Beaudreau's acceptance and ratification of the *Access and License Agreement* and *Trademark License Agreement* by, through and under Acton Academy

10

COMPLAINT

Placer, as well as directly and individually—Acton Academy allowed and provided Acton Academy Placer and Beaudreau access to and use of the Acton Academy Materials and content. At all relevant times, Beaudreau was (and continues to be) fully aware that he only had access to the Acton Academy Materials and content pursuant to the terms of Acton Academy's *Access and License Agreement* and *Trademark License Agreement*.

33.    In 2020, Acton Academy approved Kennedy to open an Acton Academy campus he called "Apogee: an Acton Academy", which Kennedy consistently referred to as "Apogee Cedar Park" or "Apogee Cedar Park, an Acton Academy." Kennedy and Apogee Cedar Park signed and accepted the terms of Acton Academy's *Trademark License Agreement* effective November 9, 2020, and Kennedy signed and accepted the terms of Acton Academy's *Access and License Agreement* on November 11, 2020. By executing these agreements, as set forth in the provisions detailed above, Apogee Cedar Park and Kennedy agreed to the limited and restricted right to use the Acton Materials and content, the Acton Academy trademark name (*i.e.*, "Apogee an Acton Academy") and the Acton Academy owned Domain Name (*i.e.*, "Apogeecedarpark.com").

## C.    Acton Academy's Termination of Beaudreau and Kennedy from the Acton Academy Network

34.    Acton Placer—an Acton Academy affiliate near Sacramento—terminated Beaudreau for cause in mid-2022, and after additional investigation, Acton Academy terminated Beaudreau's remaining relationships with Acton Academy and the Acton network.

35.    Around the same time, in mid-2022, Acton Academy terminated Kennedy's Acton Academy license for non-compliance under the terms of the agreement.

36.    As a result of the terminations, and per the Acton Academy *Welcome Letter, Trademark License Agreement* and *Access and License Agreement* that both Kennedy and Beaudreau had signed, Kennedy and Beaudreau—and their affiliates—were required to "immediately discontinue use of" Acton Academy materials, "delete, destroy, or return all copies of" Acton Academy materials, and

COMPLAINT

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101

"certify in writing to [Acton Academy] that the [Acton Materials] ha[ve] been deleted or destroyed." In addition, per the *Trademark License Agreement*, upon termination, they also (1) were required to "cease, and forever refrain from, all use or employment of" the Acton Academy name or "anything deemed by Licensor to be similar to" the Acton Academy name, "whether alone or in combination with any other word, symbol, or design"; and (2) agreed "to have assigned, transferred and conveyed to [Acton Academy] any right in and to" the Acton Academy Name, "and any associated goodwill, which may have been obtained by Licensee, or which may have vested in Licensee in pursuit of offering goods or services, or through use of [the Acton Academy Name] in accordance with this Agreement[.]" Among other things, this means that, upon termination, Kennedy, Beaudreau, and their affiliates were not permitted to utilize the "Apogee" and "Apogee Cedar Park" name in connection with providing K-12 educational services, were not permitted to utilize the Acton Academy-owned domain name apogeecedparpark.com in connection with providing K-12 educational services, and were not permitted to continue to utilize the Acton Material or content in provision of said services.

37.    To date, neither Kennedy, Beaudreau, nor any Apogee entity or affiliate have certified in writing that all relevant and protected Acton Academy materials have been deleted or destroyed, and no such materials have been returned. Further, Kennedy and Apogee Cedar Park continue to use the apogeecedarpark.com in the provision of educational services, and as detailed below, Kennedy and Beaudreau have launched a national competing educational network using the "Apogee" name and the Acton Materials and content.

**D.  The Apogee Entities**

38.    Post-termination, despite the provisions of the *Trademark License Agreement* and the *Access and License Agreement*, Kennedy continued to—and to this day continues to—operate a school in Cedar Park called "Apogee Cedar Park" without Acton Academy's consent. Further, Acton Academy has learned that many of its uniquely interwoven words and phrases, and other structures and elements

12

COMPLAINT

of the Acton Academy learning design that Acton Academy authored and created, and that are unusual, unique, proprietary, and not seen in combination in other programs are currently being used by entities organized and/or controlled by Beaudreau and Kennedy, also under the name of "Apogee", and their affiliated schools without Acton Academy's approval or consent.

39.    More specifically, sometime in 2023 or 2024, Beaudreau and Kennedy—under the umbrella of their organization Apogee Strong, LLC—launched the Apogee school network, not only using the name "Apogee" but also using the central terms, structures, frameworks and schedules identical to (or thinly disguised versions of) Acton Academy's content. This school network includes over 75 Apogee schools nationwide, is prominently featured on the website for Apogee Strong, LLC— a for-profit entity with Beaudreau and Kennedy as key principals—and includes many schools that compete in the same markets as Acton Academy, including in the state of California.

40.    The Apogee school network includes various other schools, which are all listed as affiliates on the Apogee school network website and which prominently feature Kennedy and Beaudreau on their campus-specific websites.

41.    To illustrate the affiliation between Apogee Strong and the Apogee schools, the below demonstrates the direct promotion and link to Apogee St. Pete from Apogee Strong's website, beginning on the Apogee Strong homepage:

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101

13
COMPLAINT



42.    There are nearly identical promotions and links to all other Apogee schools, including various additional schools in California and elsewhere (the "Apogee Entities").

43.    Furthermore, both Beaudreau and Kennedy are prominently displayed as Team Members or Founders of the Apogee Entities.

44.    Plaintiff specifically pleads that, by misappropriating Acton Academy's trade secrets and confidential and proprietary information, Defendants have committed a tort in California within the meaning of Civil Code sections 3426 *et seq.*

45.    The Apogee Entities knowingly received and used, and continue to use, the confidential Acton materials and trade secrets as agents of, and through their contacts with, Kennedy and Beaudreau.

COMPLAINT

46.    To illustrate the ongoing violations / infringement, compare the video embedded within the Apogee Strong Website[1] discussing what a day at an Apogee School looks like, and description of its educational processes and the Acton materials outlined *supra*.

47.    The video essentially describes the unique Acton model, including project-based learning for 4 to 6 week "sprints", that end with students presenting public exhibitions of their work.

48.    On information and belief, Defendants knowingly received and used, and continue to use, the confidential and proprietary Acton materials and trade secrets as agents of, and through their contacts with, Kennedy and Beaudreau and, through Kennedy and Beaudreau's contacts, including through the Access and License Agreement and the Trademark License Agreement.

**E.  Defendants Acted in Concert**

49.    For the avoidance of doubt, Plaintiff alleges that Kennedy, Beaudreau, and the Defendants acted in concert and in combination with one another to misappropriate and use the Acton Material and content, including using confidential and proprietary Acton Academy trade secrets and materials, and including using and infringing on the Acton Academy trademarks, to launch a competing national educational services network through conversion of the Acton Academy Material and assets without compensation and in contravention of the express terms of the Access and License Agreement and Trademark License Agreement, which has caused Acton Academy injury.

**F.  Acton Academy Damages**

50.    Acton Academy has been damaged by Defendants' actions as is apparent by the ongoing misappropriation and use of Acton Materials and trademark infringement and the establishment of a directly competing school network that is actively opening competing campuses across the state of California. Among other things, the use of the Acton Materials and appropriation of Acton Academy goodwill without authorization and without compensation amounts to conversion of

[1] https://www.youtube.com/watch?v=Qyh-5aW-SvU

15

COMPLAINT

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101

Acton Academy property for which no monetary amount has been received, and through which the Apogee Entities have been unjustly enriched.

51.     More specifically, the Apogee Entities and their students are paying money to Kennedy rather than paying money to the Acton Academy system, and the Apogee Entities are not paying the required 3% revenue share that is associated with operating an Acton Academy and use of the Acton Materials. To explain, when a school is set up as an Acton campus, the school pays a $20,000.00 fee to Acton Academy, and further agrees to pay 3% in future revenues to Acton Academy for the period the school operates as an Acton Academy. However, when Kennedy and the Apogee Entities set up a competing, copy-cat school in a given area, or perhaps worse, solicit an active Acton Academy to join Apogee, they are depriving Acton Academy of the ability to launch and/or maintain a campus in the area and receive the associated fee and revenue sharing. Further, on a more granular level, each student in a given area that enrolls in an Apogee campus rather than an Acton campus constitutes a loss of revenue to Acton Academy—i.e., a loss of the 3% tuition that would be going to Acton Academy during enrollment. Acton Academy has campuses in virtually every single market that Defendants and Apogee have a presence. Thus, nearly every student enrolling in an Apogee school represents a loss to Acton Academy.

52.     Moreover, in general, Defendants are using the Acton Materials and content without paying Acton Academy in line with the standard Acton Academy contracted compensation terms, constituting conversion of Acton Academy assets. Plaintiff further asserts that, through linking Apogee schools to Acton Academy—both through misrepresentations regarding the founders and through direct use of the Acton Materials and copying the Acton model—Defendants have harmed Acton Academy's goodwill and business reputation.

**G.  <u>Acton Registered Trademarks</u>**

53. Acton Academy has the following registered trademarks (collectively, the "Trademarks" or the "Acton Registered Trademarks"):

54. "Acton Academy" – US Serial Number 767169953; US Registration Number 4861387, for "Educational services, namely, providing courses of instruction at the primary and secondary levels and distribution of course materials."

55. "Children's Business Fair" – US Serial Number 87515901; US Registration Number 5505100, for "Arranging and conducting entrepreneurs' exhibitions for business purposes; organization and holding of fairs for entrepreneurs for business purposes; organization of exhibitions for children for commercial or business purpose."

56. "Acton Children's Business Fair" – US Serial Number 87516167; US Registration Number 5712031, for "Arranging and conducting entrepreneurs' exhibitions for business purposes; organization and holding of fairs for entrepreneurs for business purposes; organization of exhibitions for children for commercial or business purpose."

57. Plaintiff asserts that Defendants' actions as detailed in this pleading infringe on their registered trademark rights protected and recognized by the above registered trademarks (the "Trademarks" or the "Acton Registered Trademarks"). In particular, Plaintiff asserts that Defendants have used the Acton Academy name in promotional materials and online content to promote and sell their competing goods and services, including a children's business fair appropriated directly from Acton. Plaintiff further asserts, on information and belief, that Defendants are using the Acton Registered Trademarks in their educational materials and in providing educational services to their customers.

**H. Piercing The Corporate Veil**

17

COMPLAINT

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasaddena, CA 91101

58. Upon information and belief, at all relevant times herein, Kennedy, Beaudreau, and DOES 1 through 100 (inclusive), and each of them were and continue to be alter egos of Apogee Humboldt.

59. It would be inequitable to allow Kennedy, Beaudreau, or DOES 1 through 100 to avoid personal liability through the use of Apogee Humboldt, including the dealings alleged herein.

60. Upon information and belief, among other things, Apogee Humboldt was inadequately capitalized; was not solvent; corporate formalities were not observed; dividends were not promptly paid; there were officers and directors who were non-functioning; corporate records were lacking; funds were commingled; assets were diverted from the company by or to a stockholder or other person or entity to the detriment of creditors; there was a lack of arm's-length relationships among related entities; and the company was a mere facade for the operations of the other Defendants.

61. As the Court may discard limited liability to prevent injustice or inequitable consequences, Plaintiff requests that the Court pierce the corporate veil of Apogee Humboldt, and hold Kennedy, Beaudreau, or DOES 1 through 100 personally liable for any damages entered against Apogee Humboldt.

## FIRST CAUSE OF ACTION

### (Breach of Written Contract)

### (Against All Defendants)

62. Plaintiff hereby realleges and incorporates herein each and every preceding paragraph as if the same were fully set forth herein.

63. Apogee Humboldt has materially breached the *Trademark License Agreement* and the *Access and License Agreement.*

18
COMPLAINT

64.    Plaintiff performed all the terms and conditions, covenants and promises required to be performed in accordance with the *Trademark License Agreement* with Apogee Humboldt and the *Access and License Agreement* with Apogee Humboldt.

65.    The actions on the part of Apogee Humboldt constitute breach of contract. Specifically, Apogee Humboldt has breached its obligations under Acton Academy's *Access and License Agreement* in that Apogee Humboldt has utilized and copied Acton Academy's Customer Data, Documentation, Provider IP, Provider Content, Confidential Information, and Services without authorization and for purposes and uses outside of the Acton Academy *Access and License Agreement*. Apogee Humboldt has also breached the terms of and violated their obligations under Acton Academy's *Trademark License Agreement*. Specifically, Apogee Humboldt has utilized and misappropriated Acton Academy's name, trademark and goodwill without authorization and for purpose and use outside of the *Trademark License Agreement* and *License and Access Agreement*.

66.    These actions by Apogee Humboldt constitute material breach of the parties' contracts (including the *Trademark License Agreement* and the *Access and License Agreement*) because Apogee Humboldt failed to substantially perform material obligations under the contracts, thereby causing Plaintiff to sustain damages for which it seeks recovery by way of this suit.

67.    As a direct and proximate result of Apogee Humboldt's material breach of contract, Plaintiff has suffered damages, in an amount to be determined by the trier of fact, but which sum exceeds the jurisdictional minimum for unlimited civil cases

68.    Plaintiff's damages are a natural, probable, and foreseeable consequence of the Apogee Humboldt's breaches. Among other things, Plaintiff's damages include damage to business reputation and loss of goodwill by virtue of continued association and connection with Apogee Humboldt; misappropriation of trade secrets, trademarks, and confidential and proprietary materials without compensation along with the associated devaluation of Acton Academy / loss of good will;

19

COMPLAINT

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101

and direct damages resulting from loss of enrollment due to competition with Apogee Humboldt utilizing Acton confidential and proprietary materials.

69.     Plaintiff seeks damages for Apogee Humboldt's breaches of the parties' agreements to date, and Plaintiff seeks specific performance under the *Access and License Agreement* and the *Trademark License Agreement.*

70.     Additionally, Plaintiff is entitled to prejudgment interest.

71.     Kennedy, Beaudreau, and DOES 1 through 100 are each jointly and severally liable for all damages, based on (*inter alia*) alter ego liability (i.e., piercing the corporate veil of Apogee Humboldt). In addition, they are each jointly and severally liable for all damages, based on other principles of law set forth herein (including, without limitation, aiding and abetting liability and liability for civil conspiracy).

## SECOND CAUSE OF ACTION

### (Breach of The Covenant of Good Faith And Fair Dealing)

### (Against All Defendants)

72.     Plaintiff hereby realleges and incorporates herein each and every preceding paragraph as if the same were fully set forth herein.

73.     The above-described *Trademark License Agreement* and the *Access and License Agreement* each contained an implied promise of good faith and fair dealing that prevented either party from doing anything to unfairly interfere with the right of the other party to receive the benefits of the contract.

74.     Plaintiff performed all conditions, covenants and promises required to be performed in accordance with the parties' agreements.

75.     Apogee Humboldt materially breached the covenant of good faith and fair dealing contained in the parties' agreements.

76.    As a direct and proximate result of the material breach of the covenant of good faith and fair dealing by Apogee Humboldt, Plaintiff has suffered damages, in an amount to be determined by the trier of fact, but which sum exceeds the jurisdictional minimum for unlimited civil cases.

77.    Plaintiff's damages are a natural, probable, and foreseeable consequence of the Apogee Humboldt's breaches.  Among other things, Plaintiff's damages include damage to business reputation and loss of goodwill by virtue of continued association and connection with Apogee Humboldt; misappropriation of trade secrets, trademarks, and confidential and proprietary materials without compensation along with the associated devaluation of Acton Academy / loss of good will; and direct damages resulting from loss of enrollment due to competition with Apogee Entities utilizing Plaintiff's  confidential and proprietary materials.

78.    Plaintiff seeks damages for Apogee Humboldt's breaches to date, and Plaintiff seeks specific performance under the *Access and License Agreement* and the *Trademark License Agreement.*

79.    Additionally, Plaintiff is entitled to  prejudgment interest.

80.    Kennedy, Beaudreau, and DOES 1 through 100 are each jointly and severally liable for all damages, based on (*inter alia*) alter ego liability (i.e., piercing the corporate veil of Apogee Humboldt).  In addition, they are each jointly and severally liable for all damages, based on other principles of law set forth herein (including, without limitation, aiding and abetting liability and liability for civil conspiracy).

## THIRD CAUSE OF ACTION

## (UNFAIR COMPETITION – COMMON LAW, CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 et seq.)

## (Against All Defendants)

21

COMPLAINT

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101

81. Plaintiff hereby realleges and incorporates herein each and every preceding paragraph as if the same were fully set forth herein.

82. Defendants' use of Plaintiff's (above-listed) Trademarks (and each of them) and Plaintiff's trade names, which misrepresents the nature, characteristics, identity, and source or sponsorship of Defendants' goods and services, constitutes aiding and abetting liability for deceptive, untrue, and misleading advertising and therefore constitutes a violation of, *inter alia*, California Business and Professions Code §§ 17200 *et seq.* and California common law.

83. Defendants' use of Plaintiff's Trademarks (and each of them) and Plaintiff's trade names are likely to have deceived and continue to deceive the consuming public. Defendants knew, recklessly disregarded, or reasonably should have known that such packaging, advertising, marketing, and promotion was untrue and/or misleading.

84. As a result of the conduct described above, Defendants have been and will be unjustly enriched at the expense of Plaintiff and the general public. The interests of the general public and Plaintiff are, therefore, closely related.

85. Defendants have been unjustly enriched, among other things, by the receipt of sales revenues from consumers who mistakenly thought that they were purchasing Plaintiff's products and services, both in California and throughout the world, but instead were purchasing Defendants' goods which are promoted and sold through advertisements that affirmatively misrepresent, either directly or by implication, the nature, characteristics, identity, and source or sponsorship of the goods.

86. Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiff, on behalf of itself and the general public, which is unable effectively to assert its interests, seeks an order of this Court ordering Defendants immediately to cease such acts of unfair competition and false advertising, and enjoining Defendants from using Plaintiff's Trademarks (or similar words), from representing that Defendants sell Plaintiff's products and/or offer Plaintiff's services, from engaging in false or misleading descriptions of facts relating to Plaintiff, and from suggesting an affiliation or connection between Defendants and Plaintiff. Plaintiff additionally requests an order disgorging Defendants' ill-gotten gains and restitution of all monies wrongfully acquired by Defendants by

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101

means of their support of such acts of unfair competition and false advertising; the order should award to Plaintiff amounts including damages, interest, and attorneys' fees.

87.    As an additional violation of California Business & Professions Code §§ 17200 *et seq.*, Defendants have made and disseminated false, deceptive and/or misleading advertising with the intent directly or indirectly to induce the public to purchase the products and services offered by Defendants as described in this Complaint.

88.    Defendants' conduct described and alleged in this Complaint constitutes false advertising in violation of California Business & Professions Code § 17200 *et seq.*

89.    As a direct and proximate result of Defendants' acts and conduct customers, prospective customers, and members of the industry are likely to be confused, misled, deceived and/or mistaken as to the source or sponsorship of Defendants' unauthorized products and services, and have been, and/or are likely to be, deterred from purchasing Plaintiff's products and services, in disruption of Plaintiff's business activities.  Plaintiff has therefore been damaged and is likely to suffer further damage in an amount to be proven at trial, and is entitled to the remedies available under Business and Professions Code § 17200 *et seq.*, including but not limited to injunctive relief and restoration of money or property rightfully belonging to Plaintiff but which was acquired by means of Defendants' wrongful acts.

90.    Kennedy, Beaudreau, and DOES 1 through 100 are each jointly and severally liable for all damages, on the basis of (inter alia) their tortious conduct and wrongdoing and also based on alter ego liability (i.e., piercing the corporate veil of Apogee Humboldt).  In addition, they are each jointly and severally liable for all damages, based on other principles of law set forth herein (including, without limitation, aiding and abetting liability and liability for civil conspiracy).

## FOURTH CAUSE OF ACTION

### (Misappropriation of Trade Secrets; Cal. Civ. Code § 3426 et seq.)

### (Against All Defendants)

91.    Plaintiff hereby realleges and incorporates herein each and every preceding paragraph as if the same were fully set forth herein.

23

COMPLAINT

92.     The acts of Defendants described above constitute trade secret misappropriation in violation the California Uniform Trade Secrets Act (UTSA), codified as Civil Code sections 3426 *et seq.*

93.     The Acton Materials are owned by Acton and constitute trade secrets within the meaning of California Civil Code section 3426.1.

94.     Among other things, Plaintiff has made reasonable efforts to keep the Acton Materials (including the information that they contain) secret by requiring all Acton affiliates to enter into the *Trademark License Agreement* and the *Access and License Agreement*. In addition, Acton Academy derives independent economic value, actual or potential, from the Acton Materials (including the information that they contain) not being generally known to the public or to other persons who can obtain economic value from their disclosure or use, including (without limitation) the economic value from financial remuneration received from Acton Academy affiliates via licensing and revenue sharing fees.

95.     Defendants acquired and used the Acton Materials through improper means and/or disclosed and used the Acton Materials without express or implied consent of Acton Academy, and at the time of such disclosure or use, knew or should have known that the Acton Materials were either (a) derived from a person who had used improper means to acquire knowledge of the Acton Materials; (b) acquired under circumstances giving rise to a duty to maintain the secrecy of the Acton Materials or limit the use of the Acton Materials; or (c) derived from or through a person who owed a duty to Acton Academy to maintain the secrecy of the Acton Materials or limit the use of the Acton Materials.

96.     Defendants have used and currently continue to use the Acton Materials without Plaintiff's authorization or consent, in competition with Acton Academy across the nation, and to Acton Academy's detriment.

24

COMPLAINT

97.    Defendants have caused damage to Acton Academy as a direct and proximate result of their acts of misappropriation, in an amount to be proven at trial. Defendants have profited from their acts of misappropriation, in amounts to be proven at trial. Defendants have been unjustly enriched as a result of their acts of misappropriation. Defendants have obtained commercial advantage derived from their acts of misappropriation.

98.    Plaintiff seeks to recover damages, including (without limitation): damages for the actual loss caused by the misappropriation; and for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.

99.    Defendants threaten to misappropriate Plaintiff's trade secrets, or threaten to further misappropriate them, continue their misappropriation or extend their misappropriation, all within the meaning of California Civil Code section 3426.2. Interim, temporary, preliminary and permanent injunctive relief is necessary to stop and prevent Defendants' actual or threatened misappropriation of the trade secrets, and eliminate the commercial advantage Defendants derived from misappropriating them.

100.    The misappropriate has been willful and malicious, thereby warranting an award of exemplary and punitive damages under Civil Code Section 3426.3, to the maximum extent permitted under the statute. Also, Defendants conduct has been willful, malicious, and oppressive, and/or fraudulent, thereby warranting an award of exemplary and punitive damages under Civil Code Section 3294.

101.    Plaintiff also seeks an award of attorney's fees and costs, including (without limitation): for Plaintiff's reasonable attorney's fees and costs due to Defendants' willful and malicious misappropriation exists (with such an award to include a reasonable sum to cover the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by Plaintiff, as well as Plaintiff's reasonable attorney's fees).

25

COMPLAINT

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101

102. Kennedy, Beaudreau, and DOES 1 through 100 are each jointly and severally liable for all damages, on the basis of (inter alia) their tortious conduct and wrongdoing and also based on alter ego liability (i.e., piercing the corporate veil of Apogee Humboldt). In addition, they are each jointly and severally liable for all damages, based on other principles of law set forth herein (including, without limitation, aiding and abetting liability and liability for civil conspiracy).

## FIFTH CAUSE OF ACTION

### (Aiding And Abetting Tortious Conduct)

### (Against Defendants Kennedy, Beaudreau, and DOES 1 – 100)

103. Plaintiff hereby realleges and incorporates herein each and every preceding paragraph as if the same were fully set forth herein.

104. Liability may be imposed on one who aids and abets the commission of an intentional tort if the person: (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act; or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.

105. Apogee Humboldt committed torts, as set forth above (in the third and fourth causes of action).

106. Each of the other Defendants (i.e., Kennedy, Beaudreau, and DOES 1 – 100) knew that Apogee Humboldt engaged in wrongdoing (as alleged in the third cause of action herein) and gave substantial assistance or encouragement to Apogee Humboldt to so act.

107. Each of the other Defendants (i.e., Kennedy, Beaudreau, and DOES 1 – 100) gave substantial assistance to Apogee Humboldt in accomplishing a tortious result and each of the other Defendants' own conduct, separately considered, constituted a breach of duty to Plaintiff (as alleged in the third cause of action herein).

108. Each of the other Defendants (i.e., Kennedy, Beaudreau, and DOES 1 – 100) knew that Apogee Humboldt engaged in wrongdoing (as alleged in the fourth cause of action herein) and gave substantial assistance or encouragement to Apogee Humboldt to so act.

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasaddena, CA 91101

109. Each of the other Defendants (i.e., Kennedy, Beaudreau, and DOES 1 – 100) gave substantial assistance to Apogee Humboldt in accomplishing a tortious result and each of the other Defendants' own conduct, separately considered, constituted a breach of duty to Plaintiff (as alleged in the fourth cause of action herein).

110. Defendants sued in this cause of action are liable to Plaintiff for aiding and abetting the tortious conduct of Apogee Humboldt (as alleged in the third and fourth causes of action herein).

111. As a direct and proximate result of Defendants' aiding and abetting the fraudulent scheme, Plaintiff sustained damages according to proof at trial.

112. Kennedy, Beaudreau, and DOES 1 – 100 are each liable for all damages and relief relating to the third cause of action.

113. Kennedy, Beaudreau, and DOES 1 – 100 are each liable for all damages and relief relating to the fourth cause of action.

## SIXTH CAUSE OF ACTION

### (Civil Conspiracy)

### (Against All Defendants)

114. Plaintiff hereby realleges and incorporates herein each and every preceding paragraph as if the same were fully set forth herein.

115. Defendants (Apogee Humboldt, Kennedy, Beaudreau, and DOES 1 – 100) and each of them knowingly and willfully conspired and agreed among themselves to perpetrate a fraud on Plaintiff to misappropriate Plaintiff's funds for their own benefit. Defendants and each of them conspired to violate Plaintiff's rights for all the causes of action alleged in this pleading.

116. Defendants and each of them did the acts and things alleged herein and above pursuant to, and in furtherance of, the conspiracy and above-alleged conspiracy agreement.

117. As a direct and proximate result of the misconduct of Defendants and each of them, as alleged herein and above, Plaintiff has suffered damages, in an amount to be determined by the trier of fact, but which sum exceeds the jurisdictional minimum for unlimited civil case.

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101

118.    In the absence of involvement of any one of or group of the Defendants, nonetheless the civil conspiracy allegations would be fully supported by the civil conspiracy among the other Defendants.

119.    Additionally, the conduct of each of the Defendants was willful and malicious and without regard for the well-being of Plaintiff, thus entitling Plaintiff to an award of punitive damages pursuant to Civil Code § 3294.

120.    Additionally (*inter alia*), Plaintiff is entitled to  prejudgment interest.

## SEVENTH CAUSE OF ACTION

### (Restitution)

### (Against All Defendants)

121.    Plaintiff hereby realleges and incorporates herein each and every preceding paragraph as if the same were fully set forth herein.

122.    In addition to the liability set forth above, each of the Defendants are liable to Plaintiff under the restitution doctrine and/or similar equitable doctrines (e.g., without limitation, unjust enrichment or quantum meruit).

123.    Retention of the benefits received by each of the Defendants would be unjust.

124.    The wrongful acts of each of the Defendants have harmed Plaintiff, including as set forth above.

125.    Because of wrongful acts of each of the Defendants, each of the Defendants holds any funds received from Plaintiff and the property/assets purchased or obtained with those funds, together with all proceeds and advantage derived from them, as a constructive trustee for the benefit of Plaintiff, at least to the extent necessary to compensate Plaintiff for the harm that it has suffered and potentially for additional harm.

126.    As a direct and proximate result of such wrongful acts, Defendants have each been unjustly enriched – and Plaintiff has suffered damages – in an amount to be determined at trial, in an amount to be determined by the trier of fact, but which sum exceeds the jurisdictional minimum for unlimited civil cases.

127.    Defendants are liable to Plaintiff, under the doctrine of quasi contract or similar equitable doctrines, for restitution in an amount to be determined at trial.

128.    Among other things, Plaintiff is entitled to prejudgment interest on the misappropriated funds.

## EIGHTH CAUSE OF ACTION

### (For A Preliminary Injunction)

### (Against All Defendants)

129.    Plaintiff hereby realleges and incorporates herein each and every preceding paragraph as if the same were fully set forth herein.

130.    Plaintiff seeks interim relief, including (without limitation) a preliminary injunction.

131.    In California, the question whether a preliminary injunction should be granted involves two interrelated factors: (1) the likelihood that the plaintiff will prevail on the merits, and (2) the relative balance of harms that is likely to result from the granting or denial of interim injunctive relief.

132.    The activities of Defendants have unreasonably interfered with Plaintiff's rights and property as set forth above, including (without limitation) Plaintiff's business operations and intellectual property ownership, and other rights.

133.    Here, Plaintiff pleads and provides evidence of a substantial likelihood of suffering an irreparable injury, with no speedy or adequate remedy at law. If the Court does not grant the preliminary injunctive relief Acton Academy seeks, harm is probable and imminent because Defendants have indicated an intent to continue to distribute, copy, and profit from Acton Academy's proprietary information. Unless restrained and enjoined by order of this Court, the Defendants will continue to unreasonably interfere with Plaintiff's rights and property as set forth above, including (without limitation) Plaintiff's business operations and intellectual property ownership, and other rights; and Plaintiff will suffer irreparable harm.

134.    The harm is irreparable to Acton Academy, which risks losing significant profits and/or intellectual property to which Acton Academy is fairly entitled. Acton Academy will suffer

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101

29

irreparable harm, damage, and injury unless the acts and conduct of Defendants complained of hereinabove are enjoined because Defendants' use of the Acton Academy marks and content is likely to cause confusion among customers and vendors which will result in a loss of customers, reputation, revenue, and profits, diminished marketing and advertising, and trademark dilution.

135.    It is essential that Defendants' infringing acts be restrained. If Defendants are allowed to use the Acton Academy marks and content or other marks confusingly similar to Acton Academy 's marks and content, Acton Academy will suffer a financial loss to its business which is difficult to determine and which may not be regained.

136.    Plaintiff has further demonstrated a substantial likelihood of success on the merits through Acton Academy's Complaint, which satisfies this requirement in that it demonstrates that Defendants have profiting from Acton Academy's proprietary information, in addition to sharing the information with third parties. Defendants' continued use of proprietary information, as well as their clear intent to continue using the information for their own benefit, has caused financial harm to Acton Academy. Acton Academy seeks to enjoin Defendants from using and disseminating its proprietary information, copying or reproducing the information, or profiting off the information.

137.    The threatened injury to the Plaintiff outweighs any possible harm to the Defendants as the proprietary information is owned by the Plaintiff, and the Defendants have come in possession of the information through impropriety, including but not limited to, the unlawful dissemination of the protected information by founders, Kennedy and Beaudreau.

138.    Finally, the granting of this injunction would not disserve the public's interest, as it promotes the public interest in maintaining and protecting from dilution intellectual property,

139.    For these reasons, Acton Academy asks the Court to restrain Defendants from using its proprietary information for their own financial benefit in violation of Acton Academy's rights.

140.    This application is supported by the verified allegations made herein.

141.    Acton Academy requests an ex parte entry of the temporary restraining order ("TRO") it seeks. If the TRO is not granted, Acton Academy will suffer irreparable injury and loss, and there is not enough time to formally serve notice on Defendants before Defendants continue this damaging activity.

30

COMPLAINT

142. Acton Academy is willing to post a reasonable bond in an amount to be determined by the Court.

143. In doing the acts heretofore alleged the Defendants, and each of them, are guilty of malice, fraud, and/or oppression as defined in Civil Code Section 3294 and Plaintiff should recover punitive and exemplary and punitive damages, in addition to actual damages, to make an example of and to punish Defendants, in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### (For A Permanent Injunction)

### (Against all Defendants)

144. Plaintiff hereby realleges and incorporates herein each and every preceding paragraph as if the same were fully set forth herein.

145. Acton Academy seeks a permanent injunction.

146. Acton Academy asks the Court to set its request for permanent injunction for a full trial on the merits and, after the trial, issue a permanent injunction requiring Defendants, and all persons in active concert or participation with Defendants, to:

    a.   certify in writing the destruction or return of all the Acton Materials,

    b.   cease use of all the Acton Materials,

    c.   remove and/or delete all uses of the Acton Registered Trademarks and the Acton Trademark Terms from any of Defendant's website(s), marketing, promotion, curriculum, communications, or other content,

    d.   cease all use of the Acton Registered Trademarks and the Acton Trademark Terms,

    e.   cease utilizing answers, terms, or phrases in Apogee online FAQs that have previously been authored or created by Acton,

    f.   cease utilizing language for Apogee job postings that have previously been authored by or created by Acton,

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101

g.  cease representing to parents and children that any of the Apogee Entities or their affiliates have opened or are operating a school "Just like Acton" by using any Acton Academy terms, phrases, concepts, or content.

147.  Furthermore, Acton Academy requests that the Court order Defendants to produce all of Defendants' curriculum and material that any of the Defendants are utilizing and/or otherwise providing to Apogee affiliates in order to permit Acton Academy's review of Defendants' compliance with (or violation of) Acton Academy's trademarks, copyrights, and agreements.

148.  In doing the acts heretofore alleged the Defendants, and each of them, are guilty of malice, fraud, and/or oppression as defined in Civil Code Section 3294 and Plaintiff should recover punitive and exemplary and punitive damages, in addition to actual damages, to make an example of and to punish Defendants, in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

### (For Declaratory Relief)

### (Against all Defendants)

149.  Plaintiff hereby realleges and incorporates herein each and every preceding paragraph as if the same were fully set forth herein.

150.  Plaintiff has an interest under at least two contracts – i.e., the *Trademark License Agreement*, and *Access and License Agreement*.

151.  Plaintiff has owns intellectual property rights, including (without limitation) the Trademarks and trade secrets set forth herein.

152.  Plaintiff desires a declaration of Plaintiff's rights and Defendants' duties with respect to each other, and in respect to, in, the above-mentioned contracts and intellectual property.

153.  Among other things, Plaintiff desires a declaration of its exclusive ownership rights and rights to use each of the Trademarks and all of the trade secrets at issue.

154.  Plaintiff is informed and believes that there is an actual controversy between Plaintiff and each of the Defendants, regarding each of the matters set forth above under this cause of action.

32

COMPLAINT

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101

Defendants – by their conduct and/or statements – have manifested a belief that each of the Defendants disputes Plaintiff's position regarding the parties' respective rights.

155.    Plaintiff desires a judicial declaration of the rights and duties of Plaintiff and Defendants regarding each of the above-mentioned contracts and intellectual property rights.

156.    In doing the acts heretofore alleged the Defendants, and each of them, are guilty of malice, fraud, and/or oppression as defined in Civil Code Section 3294 and Plaintiff should recover punitive and exemplary and punitive damages, in addition to actual damages, to make an example of and to punish Defendants, in an amount to be determined at trial.

## JURY DEMAND

157.    Plaintiff hereby demands a trial by jury for all issues triable by a jury.

## PRAYER

WHEREFORE, Plaintiff respectfully prays Defendants be cited to appear and answer herein, and that upon a final trial of this case, Plaintiff be awarded injunctive relief against Defendants ordering them to do the following:

(a)    certify in writing the destruction or return of all the Acton Materials,

(b)    cease use of all the Acton Materials,

(c)    remove and/or delete all uses of the Acton Registered Trademarks and the Acton Trademark Terms from any of Defendant's website(s), marketing, promotion, curriculum, communications, or other content,

(d)    cease all use of the Acton Registered Trademarks and the Acton Trademark Terms,

(e)    cease utilizing answers, terms, or phrases in Apogee online FAQs that have previously been authored or created by Acton,

(f)    cease utilizing language for Apogee job postings that have previously been authored by or created by Acton,

33

COMPLAINT

(g)    cease representing to parents and children that any of the Apogee Entities or their affiliates have opened or are operating a school "Just like Acton" by using any Acton Academy terms, phrases, concepts, or content.

Plaintiff further prays that it be awarded judgment against Defendants for the following:

i.     Actual damages;

ii.    Defendant's profits earned as result of trademark infringement;

iii.   Unjust enrichment;

iv.    Prejudgment and post-judgment interest

v.     Judgment for Plaintiff's reasonable and necessary attorney fees;

vi.    For a judicial declaration (or judicial declarations), as set forth above; and

vii.   All costs of court and other and further relief, general and special, legal and equitable, to which Plaintiff is justly entitled.

Plaintiff additionally prays that it be awarded judgment against Defendants for the following:

1. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully demands a jury trial on all of the non-equitable issues and claims.

Dated: August 6, 2025                    BUCHANAN & PATTERSON, LLP

                                         By _____
                                            Brian F. Buchanan
                                            Jeremy Friedman

                                         Attorneys for Plaintiff ACTON ACADEMY

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101

34
COMPLAINT

## VERIFICATION

I have read the foregoing: VERIFIED COMPLAINT.

I am an Officer of Plaintiff ACTON ACADEMY (which is a party to this action) and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

The matters stated in the foregoing document are true of my own knowledge – except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this __6__ th day of August, 2025 at Carmel, CA.

_Laura Sandefer_
Laura Sandefer
President of Plaintiff ACTON ACADEMY

BUCHANAN & PATTERSON, LLP
465 E. Union Street, Ste. 201
Pasadena, CA 91101

35
COMPLAINT